UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GLACIER FISH COMPANY LLC,

Plaintiff,

v.

PENNY PRITZKER, et. al.

Defendants.

CASE NO. C14-40 MJP

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

THIS MATTER comes before the Court on the parties' cross-motions for summary judgment. (Dkt. Nos. 19, 20.)  Having reviewed the motions, respective responses and replies (Dkt. Nos. 20, 21, 24), and all related papers, the Court GRANTS Defendants' motion and DENIES Plaintiff's motion.

## Background

**A.  Regulatory Background**

The Magnuson-Stevens Fishery Conservation and Management Act ("MSA") was enacted, among other things, to "conserve and manage the fishery resources found off the coasts of the United States. . ." 16 U.S.C. §1801(b)(1). The MSA provides for the establishment of

1    eight Regional Fishery Management Councils, each made up of fisheries experts.   16 U.S.C.

2    §1852(a)(1).   Each Regional Council is required to prepare a proposed Fishery Management Plan

3    ("FMP") and amendments to that plan.   16 U.S.C. §1852(h)(1).   An FMP may require a permit,

4    designate zones where and periods when fishing may be limited, prohibit certain types of fishing

5    gear, and limit access to a fishery, among other things.   16 U.S.C. §1853.

6         An FMP, any amendments, or implementing regulations must be submitted to National

7    Marine Fisheries Services ("NMFS").   (Dkt. No. 20 at 10.)   NMFS is tasked with reviewing the

8    FMP to ensure consistency with the MSA's ten national standards and other provisions of the

9    MSA, among other things.   (Id.)   NMFS then publishes a proposed rule, requests public

10    comment, and takes final action on the proposal.   (Id.)   NMFS can approve, disapprove, or

11    partially approve the plan or regulations.   (Id.)

12         A Regional Council may choose establish a limited access system for a fishery in order to

13    achieve optimum yield.   16 U.S.C. §1853(b)(6).   The MSA allows the Regional Council to

14    implement a Limited Access Privilege Program ("LAPP") for any fishery managed under such a

15    limited access system.   16 U.S.C. §1853a.   The MSA defines a LAPP as "a Federal permit,

16    issued as part of a limited access system under section 1853a of this title to harvest a quantity of

17    fish expressed by a unit or units representing a portion of the total allowable catch of the fishery

18    that may be received or held for exclusive use by a person."   16 U.S.C. §1802(26) (definitions).

19         The MSA requires the Regional Council to develop a cost recovery program and collect a

20    fee to recover certain costs related to the administration of any LAPP.   16 U.S.C. §1853a(e).   In

21    addition, the MSA tasks the Regional Council with developing "a methodology and the means to

22    identify and assess the management, data collection and analysis, and enforcement programs that

23    are directly related to and in support of" the LAPP.   Id.

24

**B. Factual Background**

Since 1997, the total amount of Pacific whiting available to be caught by non-tribal commercial harvesters has been divided among three sectors: the catcher-processor sector ("CP Sector"), the mothership sector, and the shoreside sector.  (Dkt. No. 19 at 4.)  The CP Sector consists of vessels that harvest and process Pacific whiting at sea.  (Id.)  The CP Sector's allocation of Pacific whiting presently consists of 34% of the allowable catch.  (Id.)

In 1997, Glacier Fish Company, LLC ("Plaintiff") and two other Seattle-based companies—the CP Sector participants—formed the Pacific Whiting Conservation Cooperative ("PWCC").  (Id.)  The purpose of the cooperative was to rationalize the CP sector by facilitating orderly harvest of the sector's Pacific whiting allocation in order to avoid an unrestrained "race for fish" among sector participants.  (Id.)  To achieve this purpose, each member of PWCC limits its Pacific whiting harvest to a certain percentage of the CP Sector's total allocation.  (Id. at 4-5.)

In January 2011, NMFS and the Pacific Fishery Management Council ("Pacific Council") implemented Amendment 20 to the Pacific Coast Groundfish Fishery Management Plan, also known as the Trawl Rationalization Program.  (Dkt. No. 20 at 11-12.)  Amendment 20 created an individual fishing quota ("IFQ") program for the shoreside trawl fleet and cooperative programs for the mothership sector and CP Sector.  (Id. at 12.)  Amendment 20 established a LAPP with associated IFQs and coop permits.  (Id.); 50 C.F.R. §660.100.

Under Amendment 20, PWCC continues to operate as a coop, as it has done voluntarily for years.  (Id. at 13.)  However, the program created several changes for PWCC.  (Id.)  PWCC is now required to apply annually for a CP Coop Permit.  (Dkt. No. 19 at 11.)  Ten Pacific whiting vessel licenses issued to PWCC members under a prior Amendment 15 were eliminated in favor of CP endorsements to limited entry permits associated with vessels that caught and processed Pacific whiting between 1997 and 2003.  (Id.)  Amendment 20 also established provisions

1   whereby individual CP-endorsed limited-entry trawl permit owners would be issued IFQs in the

2   event the coop dissolves in order to create incentives to maintain the coop.  (Dkt. No. 20 at 13.)

3   Additionally, under Amendment 20, the CP Coop Program is allocated key bycatch species

4   along with Pacific whiting.  (Id.)  Under Amendment 20, the CP Coop Program includes other

5   provisions that enhance management, data, and enforcement of the program, such as mandatory

6   data collection, among other things.  (Id. at 14.)

7           On February 1, 2013, NMFS proposed a set of rules to create a cost recovery program for

8   the Trawl Rationalization Program.  (Id.); 78 Fed. Reg. 7371.   In December 2013, NMFS

9   published its final rules implementing the cost recovery program.  78 Fed. Reg. at 75268.  NMFS

10  also calculated and announced the applicable fee percentages for each sector for the first year of

11  cost recovery.  Id.

12          On January 9, 2014, Plaintiff filed suit against Defendants Secretary of the United States

13  Department of Commerce Penny Pritzker, National Oceanic and Atmospheric Administration

14  ("NOAA"), and NMFS (collectively, "Defendants") alleging that the cost recovery regulations

15  violate the MSA because: (1) the CP Coop Permit is not a LAPP; (2) Plaintiff is not the holder of

16  the LAPP and should not be charged the fee; (3) NMFS, and not Pacific Council, developed the

17  methodology to calculate the cost recovery fee; and (4) the cost recovery fee should be set aside

18  because NMFS included unrecoverable costs within its fee calculation.  (Dkt. No. 1 at 4-8.)

19                                          **Discussion/Analysis**

20  **I.      Statute of Limitations**

21          Defendants contend the Court may not reach Plaintiff's first claim because it is barred by

22  the MSA's statute of limitations.   (Dkt. No. 20 at 16.)    16 U.S.C. §1855(f)(1) provides

23  "regulations promulgated by the Secretary under this chapter and actions shall be subject to

24  judicial review to the extent authorized by, and in accordance with, chapter 7 of Title 5, if a

petition for such review is filed within 30 days after the date on which the regulations are promulgated or the action is published in the Federal Register, as applicable . . ." (emphasis added).

Plaintiff's first claim is that "the C/P Coop Program is not a LAPP (and therefore not subject to cost recovery fees) because neither of the two types of permits associated with the C/P Coop Program is a limited access privilege." (Dkt. No. 1 at 5.)  Defendants argue this claim "challenges the provisions of 50 C.F.R. §660.160 establishing the C/P Coop Program and its associated requirement for a C/P coop permit." (Dkt. No. 20 at 17.)  Defendants contend the regulations relating to this claim were promulgated by NMFS in 2010 as part of its implementation of Amendment 20 to the FMP.  (Id.)  As such, Defendants argue Plaintiff's claim is time-barred by the MSA's 30-day statute of limitations because Plaintiff did not file suit until January 2014.  (Id.)

Plaintiff argues its claim is not time-barred because it "is seeking to set aside the cost recovery regulations and cost recovery fee percentage for 2014 published in the Federal Register on December 11, 2013, less than 30 days before [Plaintiff] filed suit on January 9, 2014." (Dkt. No. 21 at 4.)  Plaintiff further contends that even if its claim could be construed as relating to the regulations implementing Amendment 20, it would still be timely because "NMFS did not publish the cost recovery fee percentage that Plaintiff would have to pay until December 2013." (Id. at 4-5.)  Plaintiff relies on the Ninth Circuit's opinion in Oregon Trollers Ass'n v. Gutierrez, 452 F.3d 1104, 1113 (9th Cir. 2006), to make this argument.  In that case, the Ninth Circuit held that the "conjunctive 'and' . . . [in Subsection 1855(f)(1)] indicates that both regulations and the actions are reviewable in a timely filed petition" and that "[t]he disjunctive 'or' . . . indicates that a petition is timely filed if it is filed within thirty days of either promulgation of the regulation or

1    publication of the action . . . [t]hus as a straightforward textual matter, a petition filed within 30

2    days of the publication of an action may challenge both the action <u>and</u> the regulation under

3    which the action is taken." <u>Id.</u> at 1113 (emphasis in original).

4    Defendants argue the cost recovery regulations and fee calculation at issue were not

5    actions taken under the 2010 regulations. (Dkt. No. 24 at 8.) 16 U.S.C. 1855(f)(2) states that

6    "the actions referred to in paragraph (1) are actions that are taken by the Secretary under

7    regulations which implement a fishery management plan, including but not limited to action that

8    establish the date of closure of a fishery to commercial or recreational fishing." Defendants

9    argue this amendment was enacted in light of Congress's recognition that some management

10   regulations are prospective. (Dkt. No. 24 at 8.) Defendants contend "the regulations establishing

11   the C/P Coop Program and according its participants limited access privileges do not fit into this

12   category of having only prospective impact because they immediately required participants such

13   as Glacier and PWCC, as the C/P Coop, to acquire new permits and also authorized newly

14   imposed fees." (<u>Id.</u> at 8-9.)

15   Plaintiff's claim that the Coop Permit is not a LAPP challenges actions taken under

16   Amendment 20. Nonetheless, the Court finds that the claim is not time-barred under <u>Oregon</u>

17   <u>Trollers</u>. The amended Section 1855(f)(1) allows a person or entity to challenge a regulation or

18   action taken pursuant to a regulation within 30 days of either promulgation of the regulation or

19   publication of the action. The challenger may challenge both the action and the regulation under

20   which the action is taken. 16 U.S.C. 1855(f). While the regulations relating to Amendment 20

21   were promulgated in late 2010, the rules providing for the cost recovery fee were promulgated in

22   December 2013. NMSF derives authority to assess a cost recovery fee against Glacier from the

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 6

1    CP Coop Permit issued under Amendment 20.   Because of the relation between these

2    regulations, the Court finds Plaintiff's first claim is timely.

3    **II.      Issue Waiver**

4          Defendants also argue Plaintiff "has waived its first, second, and third claims for relief by

5    failing to raise those objections with NMFS before the agency promulgated the cost recovery

6    rules."  (Dkt. No. 20 at 19.)   Defendants argue Plaintiff "submitted no written comments to

7    NMFS on the proposed cost recovery rule during the public comment period" and that while

8    PWCC did send a detailed comment letter to NMFS, "that letter does not alert NMFS to the

9    objections [Plaintiff] has put forth in this lawsuit." (Id. at 19-20.)

10         The Ninth Circuit has held "that a party's failure to make an argument before the

11   administrative agency in comments on a proposed rule barred it from raising that argument on

12   judicial review."   Universal Health Servs., Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir.

13   2004).  This doctrine prevents courts from "usurping the agency's authority to decide the issue in

14   the first instance."  Johnson v. Dir., Office of Workers' Comp. Programs, 183 F.3d 1169, 1171

15   (9th Cir. 1999).   However, the Court can entertain an issue not raised before the agency if

16   "exceptional circumstances" warrant review.  Id.   Further, the Court can consider a claim "even

17   if the issue was considered sua sponte by the agency or was raised by someone other than the

18   petitioning party."   Portland Gen. Elec. Co. v. Bonneville Power Admin., 501 F.3d 1009, 1024

19   (9th Cir. 2007)

20         Plaintiff contends: (1) issue waiver is an affirmative defense which Defendants waived by

21   failing to plead it in their answer to Plaintiff's complaint; and (2) that NMFS had an opportunity

22   to consider the relevant issues either sua sponte or because they were raised by someone other

23   than Plaintiff.  (Dkt. No. 21 at 7-12.)

24

1        The Court need not determine whether issue-waiver is an affirmative defense.  Even if

2   issue-waiver is, as Plaintiff contends, an affirmative defense, Defendants are not precluded from

3   raising affirmative defenses at summary judgment because they failed to raise them in their

4   answer.   As Plaintiff concedes in its response brief, the Ninth Circuit has liberalized the

5   requirement that defendants must raise all affirmative defenses in their initial pleadings.  <u>Magana</u>

6   <u>v. N. Mariana Islands</u>, 107 F.3d 1436, 1446 (9th Cir. 1997).  The Ninth Circuit has also held that

7   defendants may raise affirmative defenses for the first time on summary judgment if the delay

8   does not prejudice the plaintiff.  <u>Id.</u>

9        Here, there would be no prejudice to Plaintiff if the Court were to apply the issue-waiver

10  doctrine. Plaintiff argues that it would suffer prejudice if the Court were to apply the issue

11  waiver doctrine because Defendants raised this defense after the deadline to supplement the

12  record and because Plaintiff cannot "supplement the record with materials relevant to NMFS's

13  waiver defense."  (Dkt. No. 21 at 7.)  For example, Plaintiff argues that Defendants have not

14  produced "the complete record of the implementation of Amendment 20."  (<u>Id.</u> at 8.)  Plaintiff

15  also argues that it has been prejudiced by Defendants' withholding of certain privileged

16  communications. (<u>Id.</u> at  8.)

17       However, "judicial review of agency action is limited to review of the record on which

18  the administrative decision was based." <u>Thompson v. U.S. Dep't of Labor</u>, 885 F.2d 551, 555

19  (9th Cir. 1989).  While this does not means the Court is limited to the documents the agency has

20  compiled and submitted, it means the Court must limit its inquiry to "documents and materials

21  directly or indirectly considered by agency decision-makers . . ." <u>Id.</u>  In light of these limitations,

22  the Court would not have been able to review the complete record of the implementation of

23  Amendment 20 as Plaintiff urges.   Plaintiff's second contention is equally unpersuasive.

24

1   Plaintiff argues Defendants withheld over 300 documents asserting attorney-client privilege and
2   that "it could be expected that NMFS addressed the MSA-related legal issues . . . somewhere in
3   those memoranda. . ." (Dkt. No. 21 at 8.)  Defendants filed their opening brief on July 28, 2014.
4   (Dkt. No. 20.)  To the extent Plaintiff required additional documents to make its arguments,
5   Plaintiff was at liberty to file a motion to compel or to otherwise seek relief from this Court.
6   Plaintiff failed to do so.  Accordingly, the Court applies the doctrine of issue-waiver.

7          Plaintiff's first claim is not waived.  Plaintiff's first claim is that NMFS cannot recover
8   costs from the CP sector because it does not qualify as a LAPP program.  (Dkt. No. 21 at 10.)
9   As Plaintiff points out, NMFS had the opportunity to consider this argument during the notice-
10  and-comment rulemaking for the cost recovery regulations and when implementing Amendment
11  20. 78 Fed. Reg. at 75,272.  The agency was asked to "provide the legal basis for defining the
12  C/P Coop Program as a LAPP."  Id.  In response, NMFS explained that it "decided that the C/P
13  Coop Program was a LAPP during implementation of Amendment 20" and because "it requires a
14  Federal permit for exclusive use by the coop to harvest a portion of the total allowable catch."
15  Id.

16         Plaintiff's second claim is waived.  Plaintiff's second claim is that even if the CP Coop
17  Program were a LAPP, Plaintiff cannot be required to pay the cost recovery fee because Plaintiff
18  does not hold the LAPP.  (Dkt. No. 21 at 10-11.)  Plaintiff argues NMFS identified this issue
19  itself and cites to a series of slides entitled "Developing the Trawl Rationalization Cost Recovery
20  Program."  (Id.) (citing AR 12310-14.)  While these documents show that NMFS was aware of
21  the statutory requirement that a fee can only be charged to a limited access privilege holder,
22  these documents do not show that the agency considered the distinction between the CP Coop
23  and its members that Plaintiff now draws.

24

1    Plaintiff's third claim is not waived.  Plaintiff's third claim is that the cost recovery fee

2    was not calculated pursuant to Pacific Council's methodology but, rather, by a methodology

3    developed by NMFS.  (Dkt. No. 21 at 11.)  Plaintiff contends this argument is not waived

4    because Pacific Council and NMFS considered their respective roles when developing the cost

5    recovery program.  Plaintiff is correct.  At Pacific Council's April 2010 meeting, NMFS's

6    representative Frank Lockhart noted "the Magnuson-Stevens Act (MSA) puts the Council in the

7    lead in developing a methodology for cost recovery."  AR 10790.  An email from NMFS

8    personnel dated August 2010 provides "Council develops the 'methodology and means to

9    identify and assess the management, data collection, and analysis and enforcement programs that

10   are directly related to and in support of the program. . .'"  AR 11906.

11        Although it finds that Plaintiff's second claim is waived, the Court nonetheless addresses

12   all of Plaintiff's claims below.

13   **III.    Motions for Summary Judgment**

14        **A.  Legal Standard**

15        Summary judgment is appropriate under Fed. R. Civ. P. 56(a) if the movant shows that

16   there is no genuine dispute as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317,

17   325 (1986).  The Court's review of NMFS's compliance with the MSA is governed by the

18   Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, under which a court may set aside

19   an agency action if it is "arbitrary, capricious, an abuse of discretion or otherwise not in

20   accordance with law," Id. § 706(2)(A); see also 16 U.S.C. § 1855(f)(1) (APA governs NMFS's

21   compliance with the MSA).

22        Under the APA's "arbitrary and capricious" standard, the Court must determine whether

23   the agency "has considered the relevant factors and articulated a rational connection between the

24

1  facts found and the choice made." <u>Baltimore Gas & Elec. Co.</u>, 462 U.S 87, 105 (1983); <u>see also</u>

2  <u>Midwater Trawlers Co–op. v. Dep't of Commerce</u>, 282 F.3d 710, 716 (9th Cir. 2002). This

3  standard of review is "highly deferential, presuming the agency action to be valid and affirming

4  the agency action if a reasonable basis exists for its decision." <u>Nw. Ecosystem Alliance v. U.S.

5  Fish & Wildlife Serv.</u>, 475 F.3d 1136, 1140 (9th Cir. 2007).

6          **B.  The Coop Permit as a LAPP**

7          Plaintiff argues that the CP Coop Permit is not a LAPP for two reasons: (1) while the CP

8  Coop Permit is a type of federal permit, it is not a permit to harvest a certain portion of the

9  allowable catch; and (2) the CP Coop Permit is not automatically renewable and expires.  (Dkt.

10 No. 19 at 21-23.)

11         Plaintiff contends that the CP Coop Permit is not a LAPP because it is not a permit to

12 "harvest."  (<u>Id.</u> at 21.)  16 U.S.C. §1802(26)(A) defines a "limited access privilege" as "a Federal

13 permit, issued as part of a limited access system under section 1853a of this title to harvest a

14 quantity of fish expressed by a unit or units representing a portion of the total allowable catch of

15 the fishery that may be received or held for exclusive use by a person . . ."  Plaintiff argues "[t]he

16 only type of permit related to the CP sector that actually allows the permit holder to harvest fish

17 is the limited entry permit held by Plaintiff and other members of PWCC" and that the CP Coop

18 Permit is specifically described in the regulations as "not a limited entry permit." (Dkt. No. 19 at

19 22.)  Plaintiff asserts that because the CP Coop Permit only allows the CP Sector to "receive and

20 manage" its total allowable catch of Pacific whiting, it is not a LAPP.  (<u>Id.</u>)

21         Defendants assert Plaintiff's first argument fails because the CP Coop Permit on its face

22 "authorizes the entity named above [the PWCC] to harvest 100% of the Pacific Whiting

23 allocated to the C/P sector" and provides that "this permit . . . shall be considered a grant of

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 11

1    permission to engage in activities allowed by the permit." (Dkt. No. 20 at 22) (citing AR 5472-

2    73).  They also argue "there is no meaningful distinction in this industrialized fishery between

3    harvest and the steps necessary to organize and manage that harvest by a coop." (Dkt. No. 20 at

4    23.)  Defendants contend that the First Circuit identified the CP Coop Permit at issue here as an

5    example of a LAPP.  (Id. at 22) (citing dicta in Lovegren v. Lock, 701 F.3d 5, 26-27 (1st Cir.

6    2012)).  Defendants further contend the Court should accord deference to NMFS' interpretation

7    of 50 C.F.R. §660 because it is not plainly erroneous.  (Id. at 23-24) (citing Decker v. Nw. Envtl.

8    Def. Ctr., 133 S. Ct. 1326, 1337 (2013) (setting forth standard for review when an agency

9    interprets its own regulations)).

10          The Court must determine whether deference due to NMFS's determination that the CP

11   Coop Permit is a LAPP.  NMFS determined that the CP Coop Program was a LAPP and that the

12   CP Coop Permit would formally register the CP Coop and its associated members to harvest and

13   process through a formal rulemaking procedure that included a notice-and-comment period.  75

14   Fed. Reg. 53381, 53392.  Plaintiff argues that either no deference or a lesser form of deference is

15   due to NMFS's interpretation.  However, both the formal process used by NMFS and the fact

16   that Congress has tasked NMFS with administering the MSA weigh in favor of applying

17   Chevron deference to the challenged interpretation.

18          Under the two-step framework of Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837

19   (1984), the Court first asks "whether Congress has directly spoken to the precise question at

20   issue." Id. at 842.  If it has, the Court "must give effect to the unambiguously expressed intent

21   of Congress," regardless of the NMFS's interpretation. Id. at 842–43.  If, however, the statute is

22   "silent or ambiguous" with regard to the issue, the Court then asks "whether the agency's answer

23   is based on a permissible construction of the statute." Id. at 843.

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 12

The MSA does not define "harvest."  16 U.S.C. §1802 (definitions).  The statute defines "fishing" as:

> (a) the catching, taking, or harvesting of fish;
> (b) the attempted catching, taking or harvesting of fish;
> (c) any other activity which can reasonably be expected to result in the catching, taking, or harvesting of fish; or
> (d) any operations at sea in support of, or in preparation for, any activity described in subparagraphs (A) through (C).

16 U.S.C. §1802(16) (definitions).  Plaintiff contends "harvest" means "catch."  (Dkt. No. 21 at 13.)  However, if the Court were to adopt Plaintiff's interpretation of the statute, the term "harvesting," as used in 16 U.S.C. §1802(16), would be superfluous.  In other words, "fishing" would be defined as "the catching, taking, or catching of fish."  The Court must "interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders the other provisions of the same statute inconsistent, meaningless or superfluous."  United States v. Cabaccang, 332 F.3d 622, 627 (9th Cir. 2003).  The Court recognizes statutes may define terms by listing words that are redundant, or have similar definitions.  Nonetheless, the MSA's use of the terms "harvesting" and "catching" to define the term "fishing" creates an ambiguity as to whether "harvesting" means something more than the act of catching fish.

Because the meaning of "harvest" is ambiguous, the Court must determine whether NMFS's determination that the CP Coop Permit is a permit to harvest fish is based on a permissible construction of the statute.  Chevron, 467 U.S. at 843.  The Court finds that it is.  "Harvest" also means "to gather."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1036 (2002).  Even if the CP Coop Permit only allows PWCC to "receive and manage" the sector's allocation of fish, the acts of receiving or managing the allocation of fish fit within the definition of "harvest" which includes activities such as "gathering."  Id.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 13

1    Even if the Court were to conclude, as Plaintiff urges, that "harvest" means "catch," the

2    CP Coop Permit does in fact allow PWCC and its members to catch fish.  While Plaintiff argues

3    the limited entry permit is the only permit related to the CP Sector that allows the permit holder

4    to catch fish, Plaintiff concedes that "CP trawl limited entry permit holders—PWCC's

5    members—cannot use their limited entry permits to catch whiting themselves until after the CP

6    coop permit has been issued to PWCC and the whiting season has opened." (Dkt. No. 21 at 16.)

7    Therefore, as a practical matter, PWCC's members cannot catch fish until the CP Coop Permit

8    has been issued.

9    Plaintiff argues that two permits combined cannot qualify as a LAPP because "LAP is

10   defined in part as 'a' single Federal permit that meets a variety of criteria by itself." (Id. at 18.)

11   Plaintiff's argument is not persuasive.  Subsection 1802(26) of the MSA defines limited access

12   privilege as "a Federal permit, issued as part of a limited access system."  16 U.S.C. §1802(26).

13   The CP Coop Permit meets this definition.  50 C.F.R. §660.160.  Because the MSA does not use

14   the word "single," the statute does not compel the interpretation Plaintiff urges.

15   Plaintiff also asserts this "functional equivalent" argument—the argument that the two

16   permits together function as a LAPP—fails in light of NMFS's position in Lovegren, 701 F.3d at

17   5. (Dkt. No. 21 at 19.)  However, NMFS's position in that case is distinguishable.  In Lovegren,

18   plaintiffs argued that elements of a sector program were the functional equivalent of a LAPP.  Id.

19   at 24.  NMFS contended that the sector was not LAPP because "there is no permit issued to a

20   sector, and no permanent or long-term allocation of fish is made to any sector."  Id.  In other

21   words, NMFS's position in that case was premised on the fact that no permit was issued to the

22   sector.  By contrast, here, PWCC is issued a permit and is allocated a percentage of Pacific

23   whiting to harvest.

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 14

1    Plaintiff's second argument is that the CP Coop Permit is not a LAPP because it

2  "'expires' rather than 'renews' at the end of its one-year term."  (Dkt. No. 19 at 22.)  16 U.S.C.

3  §1853a(f), which describes the characteristics of a LAPP, provides as follows:

4        A limited access privilege established after January 12, 2007, is a permit issued
         for a period of not more than 10 years that—

5        (1) will be renewed before the end of that period . . .

6  (emphasis added).  The CP Coop Permit expires on December 31 of the year in which it is

7  issued.  50 C.F.R. §660.160(d)(1)(ii).  The coop entity is required to submit a new permit

8  application to NMFS between February 1 and March 31 of the year in which it intends to

9  participate in the CP Coop Program.  Id.

10    Defendants contend Plaintiff's argument fails for two reasons: (1) the phrase "that

11  period" as used in subsection 1853a(f)(1) refers to the ten-year maximum duration set forth in

12  the statute rather than the one-year term of the annual CP Coop Permit; and (2) subsection

13  1853a(f)(1) cannot be construed as requiring that the CP Coop Permit be renewed before its

14  expiration to constitute a limited access privilege because that subsection describes the

15  "characteristics"—and not the "requirements"—of a limited access privilege.  (Dkt. No. 20 at 24-

16  26.)

17    The Court finds Defendants' second argument is persuasive.  This Court must construe

18  word and phrases in the MSA by "reading the whole statutory text, considering the purpose and

19  context of the statute, and consulting any precedents or authorities that inform the analysis."

20  Dolan v. U.S. Postal Serv., 546 U.S. 481, 486 (2006).  MSA Section 1853a describes limited

21  access privilege programs, generally. 16 U.S.C. §1853a. Subsection (c) describes the

22  "requirements" of a LAPP.  A separate subsection of the statute, (f), describes "characteristics"

23  of a LAPP.  Id.  The statute clearly distinguishes between "requirements" and "characteristics."

24

1  Id.  If Congress had intended for renewability to be a "requirement" for a LAPP, renewability

2  would have been included in the "requirements" section.  See Nat'l Fed'n of Indep. Bus. v.

3  Sebelius, 132 S. Ct. 2566, 2583 (2012) ("Where Congress uses certain language in one part of a

4  statute and different language in another, it is generally presumed that Congress acts

5  intentionally.")

6        The MSA does not define "characteristic" or "requirement."  16 U.S.C. §1802.  A

7  "characteristic" is "a trait, quality, or property or a group of them distinguishing an individual,

8  group, or type."  WEBSTER'S THIRD NEW INT'L DICTIONARY 376 (2002).  By contrast, a

9  "requirement" is "something that is wanted or needed."  Id. at 1929.  Further, as Defendants

10  point out in their opposition brief, Congress enacted subsection 1853a(f) in order to "authorize a

11  Council to establish limits on the duration of any LAPP allocation and provide a mechanism for

12  participants and new entrants to require or re-acquire allocations." S. REP. 109-229, 29.  The CP

13  Coop Permit serves Congress's purpose by establishing a time limit on the duration of the LAPP.

14  The permit expires annually on December 31st of the year in which it is issued.  50 C.F.R.

15  §660.160(d)(1)(ii).  The holder of the permit must then reapply and be issued a new permit

16  between February and March of the following year.  Id.

17        Plaintiff argues that Defendants' second argument fails because subsection 1853a(a)

18  "specifies 'requirements' for LAP programs are distributed through all subsections of Section

19  1853a." (Dkt. No. 21 at 21.)  Subsection (a) provides: "[a]fter January 12, 2007, a Council may

20  submit, and the Secretary may approve, for a fishery that is managed under a limited access

21  system, a limited access privilege program to harvest fish if the program meets the requirements

22  of this section."  16 U.S.C. §1853a(a).  This provision does not help Plaintiff because, as

23

24

1  discussed above, the statute distinguishes between "characteristics" and "requirements." For the

2  foregoing reasons, the Court finds that the CP Coop Permit is a LAPP.

3  **C. Holder of LAPP**

4  Plaintiff also contends it should not be required to pay the cost recovery fee at issue

5  because Plaintiff is not the holder of the LAPP. (Dkt. No. 19 at 24.) MSA Section 1853a(e)(2)

6  provides "a Council shall . . . provide . . . for a program of fees paid by limited access privilege

7  holders. . ." Plaintiff contends PWCC—not Plaintiff or its other members—is the holder of the

8  LAPP. (Dkt. No. 19 at 24.)

9  Plaintiff's attempt to differentiate between the CP Coop and its members is unpersuasive.

10  NMFS has defined the CP Coop as:

11  A harvester group that includes all eligible catcher/processor at-sea Pacific
12  whiting endorsed permit owners who voluntarily form a coop and who manage
   the catcher/processor-specified allocations through private agreements and
   contracts.

13  50 C.F.R. §660.111. This definition makes clear that the PWCC is a group comprised of its

14  members, including Plaintiff. Further, because the MSA does not define the term "holders,"

15  NMFS's construction of the term is entitled to deference. Chevron, 467 U.S. at 843. Finally, the

16  CP Coop Permit identifies the permit owners, including Plaintiff, on its face. AR 5473. In light

17  of the foregoing, the Court finds that Plaintiff is the holder of the LAPP.

18  **D. Cost Recovery Program Methodology**

19  Plaintiff contends NMFS's collection of the cost recovery fee should be enjoined because

20  the methodology used to determine the fee was developed by NMFS rather than by Pacific

21  Council. (Dkt. No. 19 at 24.) 16 U.S.C. §1853a(e) provides "a Council shall . . . develop a

22  methodology and the means to identify and assess the management, data collection and analysis,

23  and enforcement programs that are directly related to and in support of" the LAPP.

24

1    Defendants contend Plaintiff's argument fails because it ignores the actual

2    responsibilities of Pacific Council and NMFS.  (Dkt. No. 20 at 30.)  Defendants argue Section

3    1853a(e) requires Pacific Council to develop a methodology and a means to  identify and assess

4    "the several programs that are directly related to and in support of the LAPP for whom fees may

5    be recovered" rather than "the specific management activities whose costs may be recovered."

6    (Id. at 31.)  Defendants also argue that Plaintiff is wrong in asserting the Pacific Council did not

7    play the role prescribed for it by the MSA during the development of the cost recovery

8    regulations.  (Id. at 32.)

9    Plaintiff's true contention appears to be that NMFS should have incorporated the "with

10   and without" approach set forth in Appendix B to Pacific Council's recommendations into the

11   regulations defining "direct program costs" that it ultimately adopted.  (Dkt. No. 21 at 27.)

12   Pacific Council recommended NMFS identify direct costs associated with the Trawl

13   Rationalization Program by determining the "actual incremental costs" of the program.  AR

14   4343.  It explained "[a]ctual incremental costs means those net costs that would not have been

15   incurred but for the implementation of the trawl rationalization program including additional

16   costs for new requirements of the program and reduced trawl sector related costs resulting from

17   efficiencies as a result of the program."  Id.  Pacific Council's report also stated "'net costs'

18   should be interpreted in the context of Appendix B."  Id.  Appendix B to the report is a summary

19   of NOAA LAPP Guidelines that describes a "with and without" approach to calculating

20   incremental costs.  AR 4352.  NMFS adopted the definition of "incremental costs" proposed by

21   Pacific Council but did not adopt Appendix B directly into the cost recovery regulations. 50

22   C.F.R. §660.115(b)(1)(i).

23

24

1    MSA Section 1853a(e) is ambiguous as to whether NMFS was required to adopt both the

2    definition of "direct program costs" proposed by Pacific Council <u>and</u> the specific approach to

3    interpreting that definition proposed by the council.  In light of this ambiguity, the Court gives

4    deference to NMFS's position that it complied with the MSA by adopting Pacific Council's

5    definition of "direct program costs," i.e. incremental costs.  <u>Chevron</u>, 467 U.S. at 843.  To the

6    extent Plaintiff's contention is that NMFS erroneously calculated "incremental costs" by failing

7    use the "with and without" approach, the Court addresses that argument <u>infra</u>, section E.

8    **E.  Computation of Cost Recovery Fee**

9        Plaintiff argues the fee NMFS seeks to recover from the CP Sector—$176,460.05—

10   should be set aside because: (1) the fee is invalid because NMFS did not calculate incremental

11   costs using a "with and without" approach; and (2) the record does not support categorizing the

12   costs NMFS seeks to recover as incremental costs. (Dkt. No 19 at 26-27.)  Plaintiff challenges

13   NMFS's interpretation of its own regulations, 50 C.F.R. §660.115(b)(1)(ii).   An agency's

14   interpretation of its own regulations, to the extent they are ambiguous, is entitled to deference so

15   long as that interpretation is not "plainly erroneous or inconsistent with the regulation."  <u>See</u>

16   <u>Bassiri v. Xerox Corp.</u>, 463 F.3d 927, 930 (9th Cir. 2006).

17       Plaintiff argues because the definition of "incremental costs" adopted by NMFS

18   incorporates NOAA's interpretation of the types of costs that are recoverable, NMFS was

19   required to perform a "with or without" comparison to determine which costs are incremental

20   costs because this is the comparison NOAA endorses in its 2007 and 2010 publications.  (Dkt.

21   No. 19 at 25-26.)    However, the two publications from NOAA are non-binding

22   recommendations.  <u>See</u> <u>Lovgren v. Locke</u>, 701 F.3d 5, 29, n.29 (1st Cir. 2012) (stating NOAA's

23   2007 publication provides only non-binding technical advice).  Further, the discussion Plaintiff

24   cites from NOAA's 2010 publication states only incremental costs associated with LAPPs may

1   be recovered and that "[c]onceptually, measuring these costs involves a 'with and without'

2   comparison. . ." AR 4734.  Even if the publication were binding, it cannot be interpreted as

3   requiring NMFS to engage in a "with and without" comparison.  Id.

4        In February 2012, NMFS implemented a system of task codes to track employee time in

5   order to collect data regarding costs associated with the Trawl Rationalization Program.  AR

6   1585-86.  Employees are required to track their time under one of four codes, one code for

7   general work on the program and a separate code for each of the three sectors.  Id.  A

8   memorandum dated November 2013 explains NMFS determined the "with and without"

9   comparison was not a practical way to determine incremental costs because before the Trawl

10  Rationalization Program was implemented "employees' time was not tracked and coded in their

11  time card for work on the trawl fishery let alone by sector within the fishery" and that it therefore

12  was not "feasible to get an estimate of the cost of employees' time 'without' implementation of

13  the trawl rationalization program."  AR 1672.

14       Although it could not adopt the "with and without" approach, NMFS determined its time

15  keeping data accurately reflected costs directly attributable to the Trawl Rationalization Program

16  because the majority of employees included in its estimate were either hired directly to work on

17  the Trawl Rationalization Program or were directed from other agency duties to work on the

18  Trawl Rationalization Program.  AR 1672.  Because some employees had been working on the

19  same tasks before and after implementation of the Trawl Rationalization Program, NMFS

20  managers deducted time attributable to the Trawl Rationalization Program based on their

21  knowledge of these employees' duties.  AR 1689-90, 1693-94.  The regulations require NMFS to

22  determine which costs would not have been incurred "but for" implementation of the Trawl

23  Rationalization Program.  50 C.F.R. §660.115(b)(1)(i).  NMFS complied with this requirement.

24

1    To the extent the requirement is ambiguous, NMFS's approach to determining its incremental

2    costs was not "plainly erroneous or inconsistent" with its regulations and is entitled to deference.

3    Bassiri, 463 F.3d at 930.

4        Plaintiff's second argument is that the record does not support categorizing the costs

5    NMFS seeks to recover as incremental costs. (Dkt. No. 19 at 28.)  The cost recovery fee consists

6    of $25,807.11 in costs related to the CP Sector and $150,652.94 in general costs associated with

7    the Trawl Rationalization Program.   (Id. at 27) (citing AR 1681).   Plaintiff raises several

8    contentions regarding the fee calculation, including: (1) NMFS failed to provide data explaining

9    which Amendment 20-related management activities specific to the CP Sector the various offices

10   that billed to that time code were engaged in; (2) the CP Sector's share of general costs

11   impermissibly includes leave or vacation time related to employee hours spent on other sectors;

12   (3) NMFS improperly divided the "general costs" into thirds; (4) vacation time included in the

13   general cost category does not differentiate between new Amendment 20-related activities and

14   vacation time related to activities required before Amendment 20; and (5) the general cost figure

15   impermissibly includes the cost of drafting the 2013 cost recovery regulations.  (Dkt. No. 19 at

16   28-30.)

17       Plaintiff's first four contentions are unavailing.   NMFS has provided information

18   regarding the method it developed to track employee time associated with the Trawl

19   Rationalization Program.   AR 1672.   In addition, NMFS has provided data supporting and

20   explaining its calculation of both general costs and costs associated with the CP Sector.   AR

21   1681.  Plaintiff provides no authority to support its contention that the Court can or should

22   demand that NMFS use a different calculation, provide a more detailed accounting of employee

23   time, or provide the type of accounting Plaintiff contends would be reasonable.  The Court's task

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 21

1   in reviewing NMFS's compliance with the MSA is to determine whether NMFS "has considered

2   the relevant factors and articulated a rational connection between the facts found and the choice

3   made." <u>Baltimore</u>, 462 U.S. at 106.  NMFS's actions meet this standard.

4        Plaintiff's fifth contention also fails.  Plaintiff argues the general cost figure should be set

5   aside in part because this figure includes "costs related to drafting the December 2013 cost

6   recovery regulations." (Dkt. No. 19 at 29.)  Plaintiff cites to a section of the NOAA Catch Share

7   Policy, AR 4735, to support its contention.   The NOAA Catch Share Policy does not help

8   Plaintiff.  The policy provides, in relevant part, "[d]esign costs (i.e., prior to the implementation

9   of a LAP) are also not subject to cost recovery."  The costs Plaintiff challenges are not design

10  costs incurred prior to the implementation of the LAPP, because Amendment 20 was

11  implemented in 2010, effective 2011, and the costs at issue were incurred in 2013.

12                                   <u>**Conclusion**</u>

13       Because Plaintiff fails to show NMFS acted in a manner that was "arbitrary, capricious,

14  an abuse of discretion or otherwise not in accordance with law," 5 U.S.C. §706(2)(A), the Court

15  GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for

16  summary judgment.

17       The clerk is ordered to provide copies of this order to all counsel.

18       Dated this 5th day of January, 2015.

19

20                                          Marsha J. Pechman
                                            United States District Judge
21

22

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 22